JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

18-cv-139

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Steven A. Conner DPM, P.C. | Dry Cast Holdings LLC d/b/a Drycast  18   139 |

**(b)** County of Residence of First Listed Plaintiff  Allegheny County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL  60602  Telephone 312-658-5500

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | | ☐ 367 Health Care / | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. § 227
Brief description of cause:
Violation of the Telephone Consumer Protection Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

JAN 11 2018

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 01/11/2018 | Phillip A. Bock  *Phillip A Bock* |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |

JS 44 Reverse (Rev. 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
   United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
   Original Proceedings. (1) Cases which originate in the United States district courts.
   Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
   Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
   Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
   Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
   Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
   **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Steven A. Conner, DPM, P.C., 9102 Babcock Blvd., Ste. 109 Pittsburgh, PA 15237

Address of Defendant: Dry Cast Holdings LLC, 3820 Bendemeer Road Cleveland, Ohio 44118

Place of Accident, Incident or Transaction: _____

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☒

Does this case involve multidistrict litigation possibilities? Yes☐ No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) 47 U.S.C. § 227

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Richard Shenkan , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: 01/11/2018          Richard Shenkan   *Richard Shenkan*
                          Attorney-at-Law                    Attorney I.D.#

**NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.**

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

JAN 11 2018

DATE: 01/11/2018          Richard Shenkan   *Richard Shenkan*
                          Attorney-at-Law                    Attorney I.D.#

CIV. 609 (5/2012)

Telephone          FAX Number          E-Mail Address

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

EVEN A. CONNER DPM, P.C.,                         :
ividually and as the representatives of a class   :          CIVIL ACTION
imilarly-situated persons,        v.              :
                                                  :          **18    139**
Y CAST HOLDINGS LLC d/b/a DRYCAST,                :
                                                  :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| _01/11/2018_ | Richard Shenkan | Steven A. Conner DPM, P.C. |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| _248-562-1320_ | 888-769-1774 | rshenkan@shenkanlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

JAN 11 2018

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

JAN 11 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN A. CONNER DPM, P.C., )
individually and as the representatives of )
a class of similarly-situated persons, )
                         )
                  Plaintiff, )
                         ) Case No.
      v. )
                         ) CLASS ACTION
DRY CAST HOLDINGS LLC d/b/a )
DRYCAST, )
                         )
               Defendant. )

18   139

**FILED**

JAN 11 2018

KATE BARKMAN, Clerk
By_____Dep. Clerk

## CLASS ACTION COMPLAINT

Plaintiff, Steven A. Conner DPM, P.C., ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, allege the following upon information and belief against defendant, Dry Cast Holdings, LLC d/b/a DryCast ("DryCast"):

## PRELIMINARY STATEMENT

1.     Defendant has sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.     Defendant sent Plaintiff at least one advertisement by facsimile and in violation of the TCPA. Exhibit A. Plaintiff did not expressly consent to receive any

advertisement from Defendant by fax. Moreover, Plaintiff does not have an established business relationship with Defendant.

3.      Plaintiff brings this action against Defendant on behalf of a class of all persons and entities that Defendant sent one or more telephone facsimile messages ("faxes") about Defendant's cast protection devices, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Defendant's violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.      Defendant's unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. The recipient of a "junk" fax loses the use of its fax machine while receiving an unsolicited fax transmission, and many lose their paper and ink toner in printing the fax. Such an unsolicited fax interrupts the recipient's privacy. A junk fax wastes the recipient's valuable time that would have been spent on something else.

5.      Defendant's fax advertises a commercially available medical device for protecting casts. Exhibit A.

6.      Defendant's fax promotes the sale of Defendant's cast protecting devices directly to physicians and also requests that physicians refer their patients

2

to Drycast.com to obtain Defendant's products. Exhibit A.

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiff, Steven A. Conner DPM, P.C., is a private medical practice in Pittsburgh, Pennsylvania.

8.     On information and belief, Drycast Holding Company, LLC d/b/a Drycast is an Ohio limited liability company with its principal place of business in Cleveland, Ohio.

9.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10.    Personal jurisdiction exists over Defendant in Pennsylvania because Defendant has transacted business within the State and has committed tortious acts within the State.

11.    Venue is proper in the Eastern District of Pennsylvania because Defendant committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

12.    Defendant sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendant did so directly or with the assistance of a third party (yet unknown to Plaintiffs), Defendant is directly liable for violating the TCPA.

13.    Plaintiff has received at least one of Defendant's advertisements by facsimile. A true and correct copy of the fax Plaintiff received on October 9, 2015 is

3

attached as Exhibit A.

14.    Exhibit A is a one-page document Defendant sent by fax promoting Defendant's DryCast Cast Protector.

15.    Exhibit A promotes the commercial availability of Defendant's cast protection medical devices by stating that Defendant's cast protector is "affordable" and by offering the fax recipient a "FREE Sample" indicating that Defendant normally charges for its cast protection devices. Exhibit A.

16.    Exhibit A promotes the quality of Defendant's DryCast products by stating:

- Easy to put on & take off
- No pump necessary
- Reusable, comfortable and affordable
- Keeps cast or bandage completely dry in the shower
- Made with durable taffeta vinyl (8x stronger than standard protectors)

17.    Exhibit A promotes the quality of Defendant's DryCast products by stating that Drycast is used by the U.S. Army and Navy, the Cleveland Indians, and leading hospitals and that Drycast has been "Trusted for over 25 years!" Exhibit A.

18.    Exhibit A requests that physicians carry Defendant's DryCast products in their office or refer their patients to drycast.com. Exhibit A.

19.    Exhibit A provides Defendant's telephone number and website address to contact Defendant to order its products. Exhibit A.

20.    Exhibit A does not include a complaint mandatory opt-out notice required by 47 C.F.R. § 64.1200 (a) (4).

21.    Plaintiff did not expressly invite or give permission to anyone to send

4

Exhibit A or any other advertisement from Defendant to Plaintiff's fax machine.

22.     On information and belief, Defendant sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

23.     Plaintiff and the other class members owe no obligation to protect their fax machines from Defendant. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendant's unlawful advertisements.

### CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person sent one or more telephone facsimile messages since January 11, 2014, about DryCAST cast protectors being available for purchase through drycast.com or by calling 888-379-2278, and which did not explain that the fax recipient could request that the sender not send any future advertisements by facsimile and that the sender's failure to comply with such a request within 30 days would be unlawful.

Plaintiff anticipates modifying the proposed class definition, including proposing subclasses where appropriate, after discovery about the scope and breadth of Defendant's fax advertising program and will do so through an amended motion for class certification pursuant to Fed. R. Civ. P. 23.

25.     Excluded from the class are Defendant, any entity in which Defendant has a controlling interest, each of Defendant's officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

5

26.     In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendant sent by fax. Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

27.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

28.     **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from Defendant's records or the records of third parties.

29.     **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

        a.      Whether Exhibit A and other yet-to-be-discovered facsimiles

6

sent by or on behalf of Defendant advertised the commercial availability or quality of any property, goods or services;

     b.     Whether Defendant was the sender of advertisements by facsimile;

     c.     The manner and method used to compile or obtain the list(s) of fax numbers to which Defendant sent the faxes at issue;

     d.     Whether the Court should award statutory damages to Plaintiff and the other class members;

     e.     If the Court finds that Defendant willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

     f.     Whether the Court should enjoin Defendant from faxing advertisements in the future; and

     g.     Whether Defendant's conduct as alleged herein constituted conversion.

     30.     **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendant's advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendant's conduct, if Plaintiff prevails on its claims, then the other

7

putative class members will prevail as well.

31.    **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

32.    **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendant chooses to advertise by fax again in the future.

33.    **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly

8

burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
### TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

34.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

35.     Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendant.

36.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

37.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

38.     Exhibit A advertises Defendant's commercially available DryCast cast protection medical device. Exhibit A.

39.     Defendant sent Exhibit A to Plaintiff and the fax machines of other health professionals requesting that fax recipients purchase Defendant's product or refer their patients directly to Defendant.

9

40.     The TCPA provides a private right of action as follows:

> 3.     <u>Private right of action</u>.   A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
>> (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C)     Both such actions.

47 U.S.C. § 227 (b) (3).

41.     The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful.  47 U.S.C. § 227 (b) (3).

42.     Here, Defendant violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as <u>Exhibit A</u>) to Plaintiff and the other class members without their prior express invitation or permission.

43.     The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

44.     Here, Defendant violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice. <u>Exhibit A</u>.

45.     Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice

provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

46.     Exhibit A does not state that Defendant's failure to comply with an opt-out request within 30 days is unlawful.

47.     Exhibit A does not inform the recipient that he/she/it has a legal right to request that Defendant not send any future fax.

48.     Exhibit A does not inform the recipient that an opt-out request will be valid only unless and until the person making the request subsequently provides express invitation or permission to the sender, in writing or otherwise, to send such advertisement to such person at such telephone facsimile machine.

49.     The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if Defendant's actions were negligent. 47 U.S.C. § 227 (b) (3).

50.     If Defendant's actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

51.     Defendant Drycast is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes advertise Defendant's good, products, or services, Defendant created the faxes to be sent or approved the faxes to be sent, Defendant paid a fax broadcaster to send its faxes, the faxes were sent on

11

Defendant's behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.     That, if it finds Defendant willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendant from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

52.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

53.     Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendant.

12

54. By sending advertisements to their fax machines, Defendant improperly and unlawfully converted the class's fax machines to Defendant's own use. Where printed (as in Plaintiff's case), Defendant also improperly and unlawfully converted the class members' paper and toner to Defendant's own use. Defendant also converted Plaintiff's time to Defendant's own use, as it did with the valuable time of the other class members.

55. Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

56. By sending them unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

57. Defendant knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

58. Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendant.

59. Defendant's unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendant's illegal faxes. Defendant knew or should have known employees' time is valuable to Plaintiff.

13

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant as follows:

A.      That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.      That the Court award damages;

C.      That the Court award punitive damages;

D.      That the Court award attorney's fees;

E.      That the Court award costs of suit; and

F.      That the Court award such further relief as it may deem just and proper under the circumstances.

Respectfully submitted,

Steven A. Conner DPM, P.C., individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock

Richard Shenkan (PA 79800)
Shenkan Injury Lawyer LLC
6550 Lakeshore St.
West Bloomfield, MI 48321429
Telephone: 248-562-1320
Facsimile: 888-769-1774
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice to be submitted)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
service@classlawyers.com

14

# EXHIBIT A

# Your Patients Can
# Shower
# With a DryCast.



- Easy to put on & take off
- No pump necessary
- Reusable, comfortable and affordable
- Keeps cast or bandage completely dry in the shower
- Made with durable taffeta vinyl (8x stronger than standard protectors)

Original DryCAST Cast Protector
Copied but never duplicated

*"My patients always tell me that DryCAST allowed them to keep their cast dry, and more importantly, allowed them to remain clean and healthy."*

Dr. Kenneth Leavitt
Chief of Podiatry
New England Baptist Hospital

## Trusted for over 25 years!

**Used By:**
- U.S. Army & Navy
- Cleveland Indians
- Leading Hospitals

**Help your casted patients shower immediately by carrying DryCAST in your office or referring them to drycast.com.**

To learn more please call 888-379-2278

Thanks! Barry & the DryCAST team.

PREMIER CAST & BANDAGE PROTECTION

## DryCAST
MOST TRUSTED BY DOCTORS FOR OVER 25 YEARS

# FREE Sample

Please select one adult or one child sample below.

**ADULT**  ☐ Arm  ☐ Leg     **CHILD**  ☐ Arm  ☐ Leg

Practice Name _____

Address _____

City, State ZIP _____

Contact Name _____   Phone Number _____

Fax: 866-379-2278  ×  Email: info@drycast.com

To remove your fax number, please call 888-846-0812.

# EXHIBIT B

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000

Chicago, IL 60602

312-658-5500 (Phone) • 312-658-5555 (Fax)

**January 11, 2018**

In re: *Steven A. Conner DPM, P.C. v. Dry Cast Holdings LLC d/b/a Drycast* (ED Pennsylvania).

### Demand for Preservation of All Tangible Documents
### Including Electronically Stored Information

As part of the Class Action Complaint against Dry Cast Holdings LLC d/b/a Drycast ("Defendant"), plaintiff, Steven A. Conner DPM, P.C., hereby issues a demand for Defendant to preserve all tangible documents, including electronically stored information.

As used in this document, "you" and "your" refers to each Defendant, and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and its respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

• Digital communications (e.g., e-mail, voice mail, instant messaging);
• Word processed documents (e.g., Word or WordPerfect documents and drafts);
• Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
• Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
• Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
• Sound Recordings (e.g., .WAV and .MP3 files);
• Video and Animation (e.g., .AVI and .MOV files);
• Databases (e.g., Access, Oracle, SQL Server data, SAP);

1

- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue.

### A.  Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI regarding the time period of January 2014 to the date You receive this letter. Potentially relevant ESI includes, but is not limited to information:

1. Regarding the events and causes of action described in Plaintiff's Class Action Complaint; and
2. Regarding Your claims or defenses to Plaintiff's Class Action Complaint.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your

2

concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

### B.    Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

• Purging the contents of e-mail repositories by age, capacity or other criteria;
• Using data or media wiping, disposal, erasure or encryption utilities or devices;
• Overwriting, erasing, destroying or discarding back up media;
• Re-assigning, re-imaging or disposing of systems, servers, devices or media;
• Running antivirus or other programs effecting wholesale metadata alteration;
• Releasing or purging online storage repositories;
• Using metadata stripper utilities;
• Disabling server or IM logging; and,
• Executing drive or file defragmentation or compression programs.

### C.    Guard Against Deletion

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

### D.    Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified

3

image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of the persons named below and of each person acting in the capacity or holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from January 2014 to today's date as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

### E.    Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### F.    Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless

4

handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### G.    Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

### H.    Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

### I.    Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access

or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

## J. Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

## K. Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI, including but not limited to persons/entities involved in marketing, advertising and fax broadcasting on your behalf, to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

## L. System Sequestration or Forensically Sound Imaging

We suggest that, with respect to Defendant removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including the so-called "unallocated clusters," holding deleted files.

6

### M.    Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

### N.    Do Not Delay Preservation

I'm available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

### O.    Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

Respectfully,

Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
512-739-0390 (cell)
312-658-5515 (direct)
service@classlawyers.com

7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN A. CONNER DPM, P.C.,          )
individually and as the representatives of   )
a class of similarly-situated persons,    )
                                         )
                    Plaintiff,           )
                                         )   Case No.    18cv139
        v.                               )
                                         )   CLASS ACTION
DRY CAST HOLDINGS, LLC d/b/a            )
DRYCAST,                                 )
                                         )
                    Defendant.           )

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, OR IN THE ALTERNATIVE, A STAY OF CLASS CERTIFICATION BRIEFING PENDING DISCOVERY

Plaintiff, Steven A. Conner DPM, P.C. ("Plaintiff"), individually and on behalf

of a class of similarly situated persons, through its attorneys, and pursuant to Fed.

R. Civ. P. 23, moves this Court for an order granting class certification, or in the

alternative, a stay of briefing pending the completion of discovery. Plaintiff seeks an

order certifying the following class:

> Each person sent one or more telephone facsimile messages since
> January 11, 2014, about DryCAST cast protectors being available for
> purchase through drycast.com or by calling 888-379-2278, and which
> did not explain that the fax recipient could request that the sender not
> send any future advertisements by facsimile and that the sender's
> failure to comply with such a request within 30 days would be
> unlawful.

Plaintiff files this motion soon after the filing of its Class Action Complaint in

order to avoid an attempt by Defendant to moot Plaintiff's individual claims in this

class action. Plaintiff contemporaneously files a memorandum in support of this

motion pursuant to Local Rule 7.1. However, in this case, additional discovery is necessary for the court to determine whether to certify the class Plaintiff seeks to represent. As a result, Plaintiff will seek leave to pursue class discovery as soon as practicable.

Plaintiff will supplement this motion with an additional memorandum and other documents in support of class certification after the completion of discovery.

WHEREFORE, based upon the foregoing, Plaintiff respectfully requests that the Court certify this action as a class action pursuant to Fed. R. Civ. P. 23 or, in the alternative, enter a stay of briefing pending the completion of discovery.

Respectfully submitted,

Steven A. Conner DPM, P.C., individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock *Phillip A. Bock*

Richard Shenkan (PA 79800)
Shenkan Injury Lawyer LLC
6550 Lakeshore St.
West Bloomfield, MI 48321429
Telephone: 248-562-1320
Facsimile: 888-769-1774
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice to be submitted)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
service@classlawyers.com

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN A. CONNER DPM, P.C.,      )
individually and as the representatives of   )
a class of similarly-situated persons,    )
                                         )
                    Plaintiff,           )
                                         )   Case No.   18cv139
          v.                             )
                                         )   CLASS ACTION
DRY CAST HOLDINGS LLC d/b/a              )
DRYCAST,                                 )
                                         )
                    Defendant.           )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, OR IN THE ALTERNATIVE, A STAY OF CLASS CERTIFICATION BRIEFING PENDING DISCOVERY

Plaintiff, Steven A. Conner DPM, P.C. ("Plaintiff"), individually and on behalf of a class of similarly situated persons, through his attorneys, and pursuant to Fed. R. Civ. P. 23, moves this Court for an order granting class certification, or in the alternative, a stay of briefing pending the completion of discovery.

Plaintiff seeks an order certifying the following class:

Each person sent one or more telephone facsimile messages since January 11, 2014, about DryCAST cast protectors being available for purchase through drycast.com or by calling 888-379-2278, and which did not explain that the fax recipient could request that the sender not send any future advertisements by facsimile and that the sender's failure to comply with such a request within 30 days would be unlawful.

## INTRODUCTION

In the normal course of a putative class action, the plaintiff seeks discovery concerning the size and makeup of the class, defendants pursue discovery of their

own, and once the record is complete, the court is presented with a class certification motion, with supporting materials. Plaintiff files this motion soon after the filing of its Class Action Complaint in order to avoid an attempt by Defendant to moot Plaintiff's individual claims in this class action. *See, e.g., Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1529 (2013) (offer of full individual relief to class representative, even though rejected, rendered case moot).

As such, Plaintiff here files this motion prior to engaging in class discovery to avoid the procedural gambit of having Defendants attempt a "pick-off," arguing that *Symczyk* applies. "Although the Supreme Court's decision in *Symczyk* is ostensibly limited to FLSA claims, there is no doubt that defendants will attempt to apply the holding to class actions under Rule 23." John Campbell, *Unprotected Class: Five Decisions, Five Justices, and Wholesale Change to Class Action Law*, 13 Wyo. L. Rev. 463, 484 (2013). *Cf.* Justice Kagan's dissent in *Symczyk*: "So a friendly suggestion to the Third Circuit: Rethink your mootness-by-unaccepted-offer theory. And a note to all other courts of appeals: Don't try this at home." *Genesis Healthcare Corp.,* 133 S. Ct. at 1534 (Kagan, J., dissenting).

Plaintiff believes *Symczyk* to be inapplicable to Rule 23 actions, but files this motion and memorandum to prevent a *Symczyk*-like scenario. This motion is made based upon the expressed view of prominent members of the defense bar that *Symczyk* may be so used, and advocating for such a use. *See, e.g.*, Alan S. Kaplinsky et al., *Supreme Court Ruling on Employee's Lawsuit Will Also Affect Rule 23 Class Action Cases*, JD Supra Law News (Apr. 18, 2013),

2

http://www.jdsupra.com/legalnews/supreme-court-ruling-on-employeeslawsu98339.

Plaintiff is not seeking briefing or a ruling on the motion now, but rather requests that this motion be entered and continued until after discovery. *See Damasco v. Clearwire Corp.,* 662 F.3d 891, 896 (7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs... If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation."). At such time, Plaintiff will file an amended motion for class certification will a full memorandum and supporting documents.

NATURE OF THE CASE

This class action challenges Defendant's sending of Junk Faxes in violation of the Telephone Consumer Protection Act ("TCPA"). The TCPA forbids Junk Faxes – sending unsolicited advertisements for goods and services via facsimile. 47 U.S.C. §227(b)(1)(C). The TCPA requires that even fax advertisements being sent to those who consented to their receipt, or with whom the advertiser had an established business relationship, must include a complaint opt out notice. 47 U.S.C. §227(b)(2)(D).

Defendant sent Plaintiff and similarly situated persons Junk Faxes without their consent. These Junk Fax forms do not contain an opt out notice that complies with the TCPA. Defendant's practices affect hundreds or perhaps thousands of

3

persons throughout the United States. By sending these Junk Faxes without consent and without a compliant opt out notice, Defendant has violated the TCPA.

FACTS

On October 9, 2015 DryCast sent a fax advertisement to Plaintiff offering Defendant's cast protector medical devices. This fax advertisement is a form document, using a mail merge type function. Plaintiff did not consent to receive fax advertisements from Defendant. The Junk Fax does not contain an opt out notice that complies with the TCPA. A copy of the Junk Fax sent to Plaintiff is attached to the Class Action Complaint as Exhibit A.

ARGUMENT

The prerequisites to class certification set out under Fed. R. Civ. P. 23(a) are met. Upon information and belief, the class is so numerous that joinder is not practicable. The claim of the Class Representative raises questions of law and fact common to and typical of the claims of each class member, and the Class Representative will fairly and adequately protect the interests of the members of the class. Since the expense and burden of individual litigation effectively makes it impossible for individual class members to seek redress for the wrongs alleged in the Class Action Complaint, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

The case involves common fact questions about Defendants' fax campaign and common legal questions under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), such as:

4

a. a. Whether Exhibit A and other yet-to-be-discovered facsimiles sent by or on behalf of Defendant advertised the commercial availability or quality of any property, goods or services;

b. Whether Defendant was the sender of advertisements by facsimile;

c. The manner and method used to compile or obtain the list(s) of fax numbers to which Defendant sent the faxes at issue;

d. Whether the Court should award statutory damages to Plaintiff and the other class members;

e. If the Court finds that Defendant willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

f. Whether the Court should enjoin Defendant from faxing advertisements in the future; and

g. Whether Defendants' conduct as alleged herein constituted conversion.

Additionally, class certification is proper under Rule 23(b)(3), because questions of law or fact to Plaintiff's claim and the claims of each class member predominate over any question of law or fact affecting only individual class members, and class representation is superior to other methods for the fair and efficient adjudication of this controversy. In the alternative, class certification is proper under Rule 23(b)(1), because the prosecution of separate claims or defenses

5

by or against individual members of the class would create a risk of adjudications concerning individual members of the class that would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudication.

Plaintiff requests leave to submit a brief and other evidence in support of this motion after obtaining discovery regarding the class elements. This procedure comports with Fed. R. Civ. P. 23(c)(1)(A), which permits district courts to wait until "an early practicable time" before ruling on a motion to certify a class. *See also Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011)("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class.")(overruled on other grounds by *Chapman v. First Index, Inc.*, __ F.3d __ 2015 WL 4652878 (7th Cir. Aug. 6, 2015))(internal citations omitted); *Whiteamire Clinic v. Quill Corp.*, 2013 WL 5348377 at * 3 (N.D. Ill. Sept. 24, 2013)(Schenkier, J.)("Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality.").

## CONCLUSION

WHEREFORE, for the foregoing reasons, which will be borne out by class discovery, this case is appropriate for class certification. Accordingly, Plaintiff respectfully requests that the Court: (i) enter an order and reserve ruling on Plaintiff's Motion for Class Certification; (ii) allow for and schedule discovery to take place on class-wide issues; (iii) grant Plaintiff leave to file a supplemental or

6

amended memorandum in support of his Motion for Class Certification upon the conclusion of class-wide discovery; (iv) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented; and, (v) provide all other and further relief that the Court deems reasonable and just.

Respectfully submitted,

Steven A. Conner DPM, P.C., individually and as the representative of a class of similarly-situated persons,

By:  /s/ Phillip A. Bock

Richard Shenkan (PA 79800)
Shenkan Injury Lawyer LLC
6550 Lakeshore St.
West Bloomfield, MI 48321429
Telephone: 248-562-1320
Facsimile:  888-769-1774
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice to be submitted)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL  60602
Telephone:  312-658-5500
Facsimile:  312-658-5555
service@classlawyers.com